UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES B. TEMME, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-cv-0012 (APM) |
| ) | |
| DR. MARK T. ESPER, in his official capacity ) | |
| as Secretary of the Army, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

I.

Plaintiff James B. Temme is a veteran of the Vietnam War. In February 1969, the armored personnel carrier in which he was riding struck a landmine. *See* Joint Appx., ECF No. 23-1 [hereinafter J.A.], at 10 ¶ 2.b.[1] Plaintiff thankfully was not injured seriously, but he was injured: he sustained a wound to his left elbow. *Id.* Plaintiff did not seek medical treatment for the wound; instead, he assisted his platoonmates and treated the wound himself. *Id.* Two months later, Plaintiff experienced an infection in his left arm, requiring treatment and hospitalization for eight days. *Id.* at 4–5. Contemporaneous medical records show that on the day he was hospitalized, April 16, 1969, Plaintiff presented with an "infected wound (laceration) on left elbow" but the records make no mention of the laceration's cause. *Id.* at 47, 52. A notation made the following day, April 17, 1969, describes Plaintiff as suffering from "an infection of left elbow due to insect bite." *Id.* at 49, 52. Neither the medical records from that period nor after mention Plaintiff having received treatment for an arm laceration due to a detonated landmine. *Id.* at 5–6 ¶¶ 9–13.

---

[1] There is some conflict in the record about whether the landmine explosion occurred on February 8 or February 9, but that ambiguity is not material.

In the mid-80s, Plaintiff petitioned the U.S. Army to award him a Purple Heart based on the arm injury he sustained in February 1969. *Id.* at 167, 172. The Army rejected his request. *Id.* at 167, 184. In February 2015, Plaintiff tried again, this time applying to the Army Board for Correction of Military Records (ABCMR or Board). *Id.* at 111–15. The ABCMR denied his application both initially and on reconsideration. *Id*. at 41–45, 103–06. Plaintiff then filed this action in January 2019, seeking review of the Board's decision. Compl., ECF No. 1. Three months later, at the parties' request, the court remanded this matter to the ABCMR for it to reconsider Plaintiff's application in light of the standards set forth in *Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014). Order, ECF No. 9. The ABCMR completed that review in September 2019, and it again denied Plaintiff's request for an award of a Purple Heart. J.A. at 3–9.

The parties are once more before the court, and they have cross-moved for summary judgment. Defendant seeks affirmance of the ABCMR's decision on remand, and Plaintiff asks the court to set it aside. *See* Errata Pl.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 19 [hereinafter Pl.'s Mem.]; Def.'s Cross-Mot. for Summ. J., ECF No. 20. For the reasons that follow, the court will enter judgment in favor of Defendant and against Plaintiff.

II.

Plaintiff's claim arises under the Administrative Procedure Act (APA). "[U]nder section 706(2) of the [APA], [a] court shall 'set aside' the ABCMR's 'action, findings, and conclusions' regarding the correction of military records if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Haselwander*, 774 F.3d at 996. The Secretary of the Army has "broad discretion in administering the correction of military records," but nevertheless the Board's "action must be supported by 'reasoned decisionmaking.'" *Id.* (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)).

A court's review of an ABCMR decision is limited.  "Adjudication of these claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Kreiss v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989).  The court performs "nothing more than the normal review of agency action" and "require[s] only that the agency exercise its discretion in a reasoned manner, but . . . defer[s] to the agency's ultimate substantive decision." *Id.* at 1512.  A court, however, affords no deference to the ABCMR when the "explanation for its determination lacks any coherence" or is "largely incomprehensible." *Haselwander*, 774 F.3d at 1000 (quoting *Coburn v. McHugh*, 679 F.3d 924, 926, 930 (D.C. Cir. 2012) (internal quotation marks and citation omitted)).

### III.

#### A.

Bearing these standards in mind, the court finds that the ABCMR did not violate the APA in denying Plaintiff's application for an award of a Purple Heart.  The ABCMR's remand decision runs ten pages long.  J.A. at 3–12.  The Board described the material that it considered[2]; made relevant factual findings based on its review of those materials; and applied the criteria for an award of the Purple Heart to its factual findings.  As applicable here, those criteria required Plaintiff to demonstrate:  (1) his wound resulted from an enemy or hostile act; (2) his wound required treatment by a medical official; and (3) the medical treatment was recorded in official Army records.  J.A. at 10; *see also* Army Regulation 600-8-22, *Military Awards* § 2-8 (March 5, 2019).[3]  The Board also distinguished the present case from *Haselwander*.

---

[2] The Board had before it Plaintiff's application, his self-authored statement, two witness statements, a photograph claimed by Plaintiff to be the damaged armored personnel carrier after the landmine explosion, and five pages of medical records.  J.A. at 3.
[3] *See* https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/ARN18147_R600_8_22_admin2_FINAL.pdf.

The Board found, based on the evidence presented, that, in early February 1969, Plaintiff in fact had suffered "an injury to some degree" to his left elbow from a detonated landmine. J.A. at 10 ¶ 2.b. This finding was a reversal from the Board's earlier determination that Plaintiff had not shown that he had been wounded as a result of hostile enemy action. *Id*. at 105. Notwithstanding this change, the Board still denied his application for a Purple Heart. It concluded that Plaintiff had not met the second of the three criteria: he had not shown a connection between the elbow wound he sustained and the requisite medical treatment. *Id.* at 10 ¶ 2.b-2.c; *see also* Army Regulation 600-8-22 § 2-8(c) ("To qualify for award of the [Purple Heart] the wound must have been of such severity that it required treatment, not merely examination, by a medical officer."). The Board explained that Plaintiff did not seek medical treatment in the immediate aftermath of the landmine explosion or during the two months that followed. It then found that the records failed to establish that "the elbow ailment for which he was [ ] treated was proximately related to the injury he received two months earlier." J.A. at 10 ¶ 2.c. In other words, the proof supplied by Plaintiff did not sufficiently establish that his hospitalization in April 1969 was causally related to the injury to his left arm in February 1969.

In support of this conclusion, the Board observed that the medical records contained no reference to the landmine explosion. It deemed that absence to be significant "because one must assume that a medical care provider would take great care in determining the origin of an injury he or she is about to treat," and further "assume that a medical care provider might treat an injury that resulted from an ordnance blast (which might include shrapnel imbedded into the skin and other tissue) differently from an injury" resulting from another cause. *Id.* The Board also noted that the only cause for the infection cited in the medical records was "an insect bite." *Id.* The Board ultimately concluded that "the facts and circumstances of the case d[id] not match the

4

overall criteria and standards for the Purple Heart," and identified those facts and circumstances as "includ[ing] the two-month delay in receiving medical treatment and the uncertainty as to whether the symptoms that motivated the visit to the aid station were proximately caused by the landmine blast or, instead, caused by an insect bite or some other injury." *Id.* at 11 ¶ 2.d.

Finally, the Board distinguished *Haselwander* as a case in which "there was virtually no dispute that the applicant was truly wounded in combat; virtually no dispute that the wound he received truly required medical attention; and virtually no dispute that he truly did receive the required medical attention." *Id.* at 11 ¶ 2.e. Unlike this case, the Board explained, in *Haselwander*, "there was a clear evidentiary nexus between the enemy-inflicted wound and the medical treatment received. But in this case, the preponderance of evidence does not support that the applicant's enemy-inflicted wound required medical treatment or that he actually received treatment for the enemy-inflicted wound." *Id.* at 12 ¶ 2.f.

B.

Plaintiff challenges the Board's decision on three grounds. First, he contends that the "Board ignored evidence of the Veteran's injury and cast doubt on the buddy statements provided by the Veteran without explanation." Pl.'s Mem. at 7. Second, he asserts that "the Board refused to adequately reconsider its position [ ] given the *Haselwander* standard . . ." *Id.* And, third, he maintains that the Board "ignored specific language within AR 600-8-22 2-8 . . . , which states that injuries caused by enemy placed mines or traps 'clearly justify award of the Purple Heart.'" *Id.* None of these arguments is persuasive.

The Board did not, as Plaintiff insists, "gloss[ ] over" the entry in the medical records describing Plaintiff to have sustained as a "*laceration* on the left elbow." *Id.* at 9. The Board plainly acknowledged that entry, J.A. at 5 ¶ 9, but ultimately found that entry (and others) to be

ambiguous as to the cause of Plaintiff's injury for which he received treatment, *id.* at 10 ¶ 2.c. It was not unreasonable for the Board to have expected the five pages of contemporaneous medical records, or later medical records, to *somewhere* reflect that a landmine explosion necessitated medical treatment. The Board's expertise and experience in reviewing military medical records is entitled to deference, and this court will not disturb the Board's "careful[ ] review" of them in this case. *Id.*[4] Additionally, Plaintiff does not identify any portion of the Board's decision that "cast doubt" on Plaintiff's "buddy statements." To the contrary, the Board expressly credited those statements. *See id.* at 10 ¶ 2.b (acknowledging that both "applicant's statement *and* witness statements indicate that the explosion from the enemy mine affected the applicant's left elbow").

Nor did the Board misapply *Haselwander*. In that case, also involving a request for an award of a Purple Heart, the veteran submitted substantial evidence showing that he had in fact been wounded by an enemy rocket and had received medical treatment for his injuries, and that his treatment had not been documented because he was immediately called back into service. 774 F.3d at 991. Despite finding that the veteran had been wounded and medically treated, the Board refused to correct his records and denied his request for a Purple Heart, because his official Army medical records contained no notation of him having suffered an injury. *See id.* at 992. The D.C. Circuit found the Board's decision to be "'stunningly myopic' and devoid of reasoned decisonmaking." *Id.* at 999. It was circular, the court explained, for the Board to refuse to correct the veteran's medical records based on the very omission—the absence of medical documentation—that Plaintiff sought to correct. *See id.* at 1000. That is not what the Board did

---

[4] Plaintiff insists that the portion of the medical records that attributes Plaintiff's injury to an insect bite is a "clear error." Pl.'s Mem. at 10. But Plaintiff offers no evidentiary support for that conclusion. He also suggests that the reason his medical records contain no reference to the landmine explosion is due to the "fog of war." *Id.* at 11. Plaintiff, however, offers no evidence concerning the circumstances of his hospitalization and treatment that would support the notion that medical personnel, over the course of eight days, were not in a position to accurately record the cause of his injury.

6

in this case, however.  The Board here actually relied on Plaintiff's medical records to discern the cause of his hospitalization and treatment.  It concluded that the records' silence as to a landmine-caused injury and their attribution of Plaintiff's treatment to an infected insect bite meant that Plaintiff had not carried his burden of showing that he received medical treatment for a wound caused by the enemy.  Unlike in *Haselwander*, this conclusion was reasonable and supported by the record evidence.

Finally, the Board did not, as Plaintiff argues, ignore the criteria set forth in AR 600-8-22.  It is true that Army policy identifies "[i]njury caused by enemy emplaced trap, mine or other improvised explosive device" as an example of an "enemy-related action[ ] which justifies eligibility for a [Purple Heart]."  AR 600-8-22 § 2-8(f)(2).  But the Board here did not find that Plaintiff's injury was not a qualifying wound; rather, it determined that Plaintiff had not sufficiently shown that he received medical treatment for his injury.  That failure of proof was the reason for the Board's denial of the Purple Heart, not a misapplication of Army policy.

IV.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF No. 19, is denied, and Defendant's Cross-Motion for Summary Judgment, ECF No. 20, is granted.

A separate final order accompanies this Memorandum Opinion.

Dated:  October 19, 2020

Amit P. Mehta
United States District Court Judge